LOUIS PIERRO,                          :
                                       :
      Plaintiff,                       :
                                       :
      v.                               :    Case No. 15-cv-580(RNC)
                                       :
                                       :
BIMBO BAKERIES USA, INC.,              :
                                       :
      Defendant.                       :

AMENDED RULING AND ORDER

Plaintiff Louis Pierro brings this action alleging age
discrimination in hiring in violation of the Connecticut Fair
Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-
60(a)(1). Defendant Bimbo Bakeries USA, Inc. ("Bimbo") has moved
for summary judgment. Whether plaintiff must prove that his age
was the "but for" cause of the adverse action, as would be
necessary if the claim were brought under the Age Discrimination
in Employment Act, ("ADEA"), 29 U.S.C. § 621, see Gross v. FBL
Fin. Servs., Inc., 557 U.S. 167, 1876 (2009), or may prevail by
showing that his age was a "motivating factor," the standard
under the ADEA until the Supreme Court's decision in Gross, has
not been authoritatively decided. Judge Shea has predicted that
the Connecticut Supreme Court will continue to apply the more
lenient "motivating factor" standard to age discrimination claims
under the CFEPA. See Weisenbach v. LQ Management, No. 3:13-cv-
1663(MPS), 2015 WL 5680322, at *7 (D. Conn. Sept. 25, 2015). In

this case, assuming the "motivating factor" standard applies, the evidence in the record is insufficient to sustain plaintiff's claim that the adverse action was motivated by the plaintiff's age.  Bimbo has provided a legitimate, nondiscriminatory explanation for the adverse action, one that is well-supported by the record, and plaintiff has not shown that the explanation is a pretext for discrimination.  Accordingly, the motion for summary judgment is granted.

## I.  Background

The parties' submissions show the following.  Plaintiff was born in 1953 and worked in the "route sales industry" for multiple food companies from 1972 to 2012.  Am. Compl. (ECF No. 15) ¶¶ 8-10.  Most recently, he worked for Hostess Foods from 2002 until 2012.[1]  Pl.'s Resume, Cover Ltr. (ECF No. 40-1) at 76, 77.  He was laid off in November 2012 when Hostess filed for bankruptcy.  Am. Compl. (ECF No. 15) ¶ 10; Pl.'s Opp'n (ECF No. 40) at 1.  As a route sales representative, plaintiff was responsible for delivery and sales of bakery products.  Lundy Dep. (ECF No. 40-1) at 74.  The work required lifting boxes of up to fifty pounds and communicating clearly with customers.  Id. at 75.  Plaintiff was also a union steward for many years.  Pl.'s Dep. (ECF No. 36-2) at 37:23-25.

After plaintiff was laid off at Hostess, he attended a job

---

[1] Interstate Bakeries Corporation ("IBC") owned Hostess Foods until IBC became Hostess Brands in 2009.

fair and subsequently sought employment with Bimbo.  Between

January and June 2013, he applied for route sales representative

jobs with Bimbo through an online job application portal.  Id. ¶

13; Pl.'s Local Rule 56(a)(2) Statement (ECF No. 40-7) ¶ 40.  His

application contained a one-line resume ("TABLE TALK PIES 1974-

1979 HOSTESS CAKE 1979-1982 DRAKES 1983-2002 IBC 2002-2012") and

a short cover letter explaining that he had worked for forty

years in the industry.[2]  Pl.'s Resume, Cover Ltr. (ECF No. 40-1)

at 76, 77.  Plaintiff's friend, Kevin O'Toole, who was well-known

in the industry, called Bimbo to recommend him.  Pl.'s Local Rule

56(a)(2) Statement (ECF No. 40-7) ¶ 33.

Plaintiff was interviewed at Bimbo for two route sales

representative positions.  The individuals responsible for

filling these positions at Bimbo, Brian Lundy and Jeannette

Depew, have stated that they were looking for three qualities in

a candidate: entrepreneurial spirit, ability to sell, and desire

to grow the business.  Lundy Dep. (ECF No. 40-1) at 23:14-18.

Plaintiff was interviewed but he received no offer.[3]  He was

---

[2] The cover letter stated in full: "Worked in bakery for 40
years, due to Hostess closing I am out of work as of 11/16/12.
Worked at Drakes Cakes for 22 years and IBC for another ten
years, previous to working at Drakes, I was employed at Table
Talk Pies, I have been employed as a salesman for all of the
companies I mentioned above. I have an excellent work ethic and
background."  Pl.'s Opp'n (ECF No. 40-1) at 77.
[3] The record suggests that there were three available positions.
Jeanette Depew was hiring for one, and Brian Lundy was hiring for
two.  Depew Dep. (ECF No. 40-3) at 19:15-17; Lundy Dep. (ECF No.
40-1) at 12:8-11.  Mr. Pierro was not in consideration for Ms.
Depew's position because she did not select his application from

informed that "the company decided to go in a different direction." Am. Compl. (ECF No. 15) ¶ 14. He then learned that the company had hired younger people for the jobs. Id. ¶ 16. Plaintiff did not seek other employment; instead he collected his pension early and retired in July 2013. Pl.'s Local Rule 56(a)(2) Statement (ECF No. 40-7) ¶¶ 8-10.

At plaintiff's deposition, he was asked why he thinks Bimbo preferred the successful applicants. Pierro Dep. (ECF No. 36-2) at 30:14-16. He answered: "I guess they were younger than me." Id. He has testified that no one made any comments about his age. Pierro Dep. (ECF No. 36-2) at 31:12-20. And he recognizes "it's possible" he wasn't hired because he was a shop steward. Id. at 37:18-38:22.

Plaintiff claims he should have been hired because he was one of the top sellers in his former route. Mr. Lundy stated that there is "usually a bidding process [for routes], and those with more experience or seniority usually can bid on better routes." Id. at 25:3-5; 59:25-60:4. Thus, plaintiff's sales record was not a compelling indication of his sales skills.

Plaintiff also points to his decades of on-the-job

---

the online portal. She testified that this was because she "wasn't that impressed" with the plaintiff's application, given the lack of detail included. Depew Dep. (ECF No. 40-3) at 60:14-25. The plaintiff was considered for the other two positions with Mr. Lundy. Lundy Dep. (ECF No. 40-1) at 20:13-18; id. at 46:4-47:25. However, Ms. Depew did interview the plaintiff as part of a group interview. Lundy Dep. (ECF No. 40-1) at 5.

experience.  It is undisputed, however, that the successful
candidates had more than enough experience to qualify for the
position.  Pl.'s Resp. (ECF No. 40) at 3 (Trevor Wright had 12
years' experience); Lundy Dep. (ECF No. 40-1) at 20:13-16; 31:1-
18 (Nick Conklin had five years of experience); id. at 43:12-23
(Edwin Nunez had sixteen years of experience); Rodriguez Resume
(ECF No. 40-1) at 103 (Angel Rodriguez had over three years of
experience).  Both parties agree there is no linear relationship
between amount of time on the job and competence.  Lundy Dep.
(ECF No. 40-1) at 58:4-7 (noting that a candidate with 43 years
of experience would not necessarily be more qualified than Mr.
Pierro); Pierro Dep. (ECF No. 36-2) at 17:13-18:4 (stating that
he could do the job better after a few months than other people
who had been there longer).

Lundy and Depew have testified that the candidates who were
hired submitted better applications.  Plaintiff's application
provided relatively little detail.  Ms. Depew stated that
plaintiff provided only a "bare" resume without any "detail in
it," and when there are "that many candidates and that many
resumes, you have to be distinctive to have yourself stand out."
Depew Dep. (ECF No. 40-3) at 60:18-61:17.

Lundy and Depew have testified that the successful
applicants had strong references and plaintiff submitted no
references.  Moreover, when they contacted others to gain
information about the plaintiff, they received negative feedback

5

about him.  The feedback specifically noted problems with his

"overall work and demeanor."  Lundy Dep. (ECF No. 40-1) at 25:5-

16.  Mr. Lundy learned that there might be "some trouble" if

plaintiff were hired, and he was concerned about maintaining a

productive work environment.  Id. at 58:18-24 ("Basically, [I was

told] to kind of stay away from him. . . . It would be like

having another shop steward in the building and probably create

some tension or concerns."); id. at 64:10-19 ("The concern was

that he was a troublemaker.  Not that he was a union guy, that he

was a troublemaker.").  Regarding feedback from others, Ms. Depew

has testified, "I got some good.  I got some bad.  And really

with the amount of candidates we had, any bad kind of knocked him

out of the pool because we had so many.  So I got some negative

feedback from my shop stewards in the building that have worked

alongside Mr. Pierro in the market."  Depew Dep. (ECF No. 40-3)

at 45:18-23.

Plaintiff did receive a positive reference from Mr. O'Toole.

Depew testified that O'Toole called "and really asked me to

consider him for the position."  Depew Dep. (ECF No. 40-3) at

46:10-18.[4]  O'Toole stated that he "was only going to send them

_____

[4] Mr. Lundy had a different experience with Mr. O'Toole: "The
only phonecall [sic] I got from Kevin O'Toole was a rather angry
one in which he explained that he was upset that we did not hire
Lou Pierro and that he was going to have to spend more time down
at the depot."  Lundy Dep. (ECF No. 40-1) at 14:24 (ostensibly
meaning that O'Toole would now have to spend more time and effort
working on labor relations).

[his] best guys." O'Toole Dep. (ECF No. 40-5) at 9:15-24.

According to O'Toole, plaintiff had never missed a day of work in

over thirty years and would always volunteer for more work. Id.

at 10:19-23. However, O'Toole never worked with the plaintiff;

he was simply a social friend. Def.'s Reply (ECF No. 41) at

15:9-16.

Lundy and Depew have testified that the successful

candidates also performed better in interviews. Edwin Nunez

"interviewed much better" than the plaintiff and had extensive

familiarity with the route he would be hired to drive. Id. at

43:22-44:10. Trevor Wright was hired because he "came in with a

very outgoing attitude, talked safety." Depew Dep. (ECF No. 40-

3) at 43:18-25. Angel Rodriguez had previously worked closely

with Lundy, so he did not feel it was necessary to bring Mr.

Rodriguez in for a second interview as he did for the plaintiff.

Id. at 48:25-49:24.[5]

Lundy and Depew have testified that they were not impressed

with plaintiff's interview responses. Lundy testified, "I felt

that Lou seemed to feel like he was a shoe-in and was entitled

and basically a guarantee for the role." Lundy Dep. (ECF No. 40-

1) at 22:22-23:18. Depew stated that the plaintiff seemed

---

[5] Though plaintiff claims he was subject to disparate treatment
in the interview process, because Rodriguez had only one
interview, the record suggests that for one of the positions,
plaintiff also "skipped" the first interview round. Pl.'s Opp'n
(ECF No. 40) at 3; Lundy Dep. (ECF No. 40-1) at 47:14-25.

"disinterested" and had a "laid back entitled persona, I guess,
because he's been in the business so long he thought that he just
had an entitlement." Depew Dep. (ECF No. 40-1) at 40:25-41:5.
Lundy stated that plaintiff did not provide satisfactory answers
about his interest in growing the business. Id. at 27:4-23.
Plaintiff's own recommender, Mr. O'Toole, conceded that Mr.
Pierro was not interested in growing the business. O'Toole Dep.
(ECF No. 40-5) at 11:8-14.

    II.  Legal Standard

    Summary judgment may be granted when there is no genuine
dispute as to any material fact, and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). A
genuine issue of fact exists "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The
court's role is not to weigh the evidence but to determine
whether the evidence is sufficient to raise a genuine issue. In
assessing the evidence, the court must review the record as a
whole, and give the nonmovant the benefit of all reasonable
inferences. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
133, 150-51 (2000). Summary judgment should be granted "against
a party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The

nonmoving party must provide admissible evidence and "may not

rely simply on conclusory statements or on contentions that the

affidavits supporting the motion are not credible." Gan v. City

of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations

omitted). Conclusory allegations, conjecture and speculation are

insufficient to create a genuine issue for trial. Kerzer v.

Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

III. Discussion

Connecticut courts analyze employment discrimination claims

under the CFEPA using the burden-shifting framework set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which

helps a plaintiff establish a case of discrimination through

inference by presenting "facts sufficient to remove the most

likely bona fide reasons for an employment action . . . ." Tyler

v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir. 1992).

The analysis proceeds in three steps:

> [A] plaintiff first bears the "minimal"
> burden of setting out a prima facie
> discrimination case, and is then aided by a
> presumption of discrimination unless the
> defendant proffers a "legitimate,
> nondiscriminatory reason" for the adverse
> employment action, in which event, the
> presumption evaporates and the plaintiff must
> prove that the employer's proffered reason
> was a pretext for discrimination.

Irizarry v. United Parcel Serv., Inc., No. 3:11-CV-1658 (JCH),

2014 WL 1246684, at *11 (D. Conn. Mar. 24, 2014)(quoting

McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 (2d Cir.

2006).

Plaintiff has satisfied the minimal burden of presenting a prima facie case. He is a member of a protected class because at the time of the alleged discrimination he was 59 years of age. He was objectively qualified for the route sales representative position. He was denied a position. And the denial occurred under circumstances giving rise to an inference of discrimination. Bimbo hired younger applicants for the three route sales representative positions and did not make an offer to the plaintiff although he had more experience.

Bimbo has satisfied its burden of proffering a legitimate, nondiscriminatory reason. As discussed above, Bimbo explains that the applicants who were hired were better qualified in terms of the qualities Bimbo had in mind when it assessed the applicants, in particular, interest in growing the business. Moreover, the others submitted better applications, performed better in the interviews, had stronger references and were not the subject of negative feedback.

Because Bimbo has met its burden, it is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). Specifically, plaintiff must demonstrate that the proffered reason is merely a pretext or cover-up for age discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143

(2000).  He has not met this burden.

Plaintiff states that Bimbo's detailed explanation is merely
a pretext because his credentials were so superior to the
credentials of the persons selected that no reasonable person, in
the exercise of impartial judgment, could have chosen the other
candidates over him.  I disagree.  The evidence in the record
does not support a finding that plaintiff was objectively a
superior applicant.  Plaintiff relies on his long experience in
route sales.  It is undisputed, however, that the nature of the
position did not require extensive experience and the successful
candidates were more than adequately qualified in terms of their
experience.  A reasonable jury could not find that plaintiff was
objectively a better candidate for the position just because he
had more experience.

No other factors support a finding of pretext.  Nothing in
the record suggests that Bimbo's explanation is unworthy of
credence.  See Bombero v. Warner-Lambert Co., 142 F. Supp. 2d
196, 203 n.7 (D. Conn. 2000) (plaintiff may sustain burden of
demonstrating that employer's explanation is a pretext by
pointing to weaknesses, implausibilities, inconsistencies or
contradictions in the explanation).  Plaintiff submitted no
references and his only recommendation came from a friend, as
opposed to a daily supervisor.  When Bimbo undertook to learn
more about the plaintiff, it got negative feedback from people in
the industry.  Bimbo wanted people with an interest in growing

11

the business and, as far as it knew at the time, plaintiff had no such interest.  Because the evidence does not support a finding of pretext, summary judgment is appropriate.

IV. <u>Conclusion</u>

Accordingly, the motion for summary judgment is hereby granted.

So ordered this 3rd day of October 2017.


                                        <u>      /s/ RNC        </u>
                                            Robert N. Chatigny
                                        United States District Judge